**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Cause No. 4:21-CR-00501 JAR** |
| **v.** | ) | |
| | ) | |
| **GREGORY ORTLIP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

*"Maryland Heights police officer arrested in online sex predator sting."*
*KSDK News Channel 5, August 27, 2021*

*"Maryland Heights cop now facing federal child porn charge."*
*St. Louis Post Dispatch.  September 9, 2021*

*"Ex-Maryland Heights officer faces 6-year term in child pornography case."*
*St. Louis Post Dispatch.  August 6, 2022*

These are a few of the headlines that appeared in the local news when Greg Ortlip went to court.  When he was charged, it made front page news.  After his guilty plea, it was front page news.  In each of these news stories, Greg's first and last name were prominently displayed.  The shame and embarrassment associated with a child pornography offense is often intense, but it was even more so for Greg with all this news coverage.

Greg was once a well-respected veteran police officer.  He had been a police officer for thirty-one (31) years.  Greg had been cited for heroism twice and is credited with directly saving two lives over his career.  His work as an officer led to countless arrests and convictions.  Like many who wear the uniform, he was a community hero.

Greg is a father.  He has an adult daughter from a prior marriage.  Greg and his most recent wife, Susan, have an adopted daughter (age 17).  Prior to his arrest, people saw him as

a family man as he was very involved in his daughter's lives and a was known as a good father and husband.

The character letters provided as exhibits also tell of Greg being a good brother and friend.  He has lifelong friends who have attested to his character and find that this offense is outside of what they have experienced.  These are individuals who say that Greg, at his core, is a good person.

Greg was an officer, father, husband, and friend.  Yet since his arrest, he is very few of these things, and can now only hope to cling on to what he has.  After his arrest, he resigned from his position with the police department.  His wife filed for divorce and said he could no longer have contact with their adopted daughter.  This was, in part, due to Greg telling her to protect herself from his shame.  In his shame he did not contest any aspect of the separation, and he allowed his wife to take everything he had to support their daughter.  She took his vehicles, retirement savings, and his share of their residence.[1]  He has nothing left but debt.

Susan is contemplating having their daughter's name legally changed to avoid people finding a connection between the two.  She does not want their daughter to bear the shame.  The news articles made it worse.  Comment sections of the news stories were particularly brutal.  Calls for his execution were common, and there were other colorful comments not fit for a court document.  His adult daughter has not spoken to him since his arrest and has more or less "disowned" him.

Because he was initially charged with a state offense and had a warrant, he was not granted the ability to be on pretrial release because the Magistrate was concerned Greg would not be granted a bond in state court and thus not get credit for time served.  While this decision

---

[1] PSR ¶ 69 (Doc. 52).

was for Greg's benefit, he had no time to get his affairs in order and has been in custody over one year.  From the day of his arrest, he has not seen his wife or daughter. Greg's relationships with them are forever altered.

Greg knows he has no one to blame for his actions but himself.  But his suffering is immense.  Now he only hopes for a sentence that reflects not only his offense, but his rehabilitative potential as well.  At fifty-six (56) years of age he must "start over," and hopes the sentence will reflect this recognition and give him the ability to do just that.

For these reasons Greg Ortlip, through Counsel, respectfully requests the Court sentence him to forty-eight months confinement, with credit for time served, and a recommendation for RDAP screening.   The recommended sentence is a joint recommendation the Defendant reached with the Government since the Change of Plea Hearing.  This sentence reflects the nature and circumstances of Greg's offense, his history and characteristics, the need for punishment and deterrence, and is sufficient but not greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2).

***The Relevant 3553(a) Factors for Consideration***

**1.        The nature and circumstances of the offense.**

While child pornography is not "victimless," attempted possession of child pornography is the lesser of the child pornography offenses on the continuum of conduct with production being the highest.  One who possesses or attempts to possess child pornography is considerably less culpable than one who produces or distributes the exploitative materials, and a possessor "is a marginal player in the overall child exploitation scheme."[2]

---

[2] *See United States v. Meysenburg,* No. 08-CR-361, 2009 U.S. Dist. LEXIS 82974, 2009 WL 2948554, at *8 (D. Neb. Sept. 11, 2009).

This sentiment has been embraced by the U.S. Sentencing Commission.  In June of 2021, the Commission released a report titled "Federal Sentencing of Child Pornography: Non-Production Offenses," which is an update to their previous "2012 Child Pornography Report."[3]  In the report, the Commission addressed findings they have made based on the data.[4]

The Commission has concluded that sentencing for non-production offenses should be revised to account for technological changes, emerging social science research about offender behavior, and variations in offender culpability and dangerousness.[5]  Specifically, the Commission recommends that instead of strict application of the guidelines, the key factors courts should look at are: 1) the **content** of the offender's child pornography collection and nature of the collecting behavior; 2) the offender's degree of involvement with other offenders in the internet **community** devoted to child pornography; and 3) whether the offender engaged in sexually abusive or exploitative **conduct** in addition to the pornography offense.[6]

With respect to content of the pornography found on Greg's devices and his "collecting behavior," the evidence supports that Greg had *zero* child pornography on any of the devices seized.  Because he was a police officer, this case was investigated thoroughly by the Missouri State Highway Patrol, the state's chief law enforcement agency.  Their investigation revealed no collections or any images of child pornography. This is an unusual case in that regard that there are no associated images, which is what

---

[3] U.S. SENT'G COMM'N Report available at:
https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (hereafter "Commission Report).
[4] Many of these points were made in the 2012 report, and the 2021 report reaffirms those findings.
[5] Commission Report, page 2 (echoing sentiments of the 2012 report).
[6] *Id*.

makes this an attempt offense.  There are no added guideline levels for number of images. With respect to content, Greg is among the least serious offenders.

With respect to the "community" factor, there is no evidence here that indicates Greg was part of any internet community that discussed or traded child pornography.  There is no evidence he knowingly shared images with others.  No chats were located showing he was talking about trading pictures with others.  This was not a peer-to-peer file sharing case where Greg had been trading images.  Here again, Greg is among the least serious offenders.

With respect to the "conduct" factor, the 2021 Report found 48% of receipt/possession defendants in FY 2019 engaged in "aggravating conduct" or "criminally sexually dangerous behavior," such as contact offenses, prior to or during the instant offense.  These statistics here show us many child pornographers engage in aggravating behaviors.  Here, there is nothing to suggest Greg engaged in sexually abusive or exploitative conduct.  There is no evidence that Greg touched any children inappropriately or tried to do so.  Because of his status as a police officer, the investigators thoroughly worked to ensure no child had been harmed by him and they found no evidence of that.

Greg did solicit a person he thought to be a minor for child pornography.  He also chatted online with another minor (age 15) who sent an image of her breasts, around the same time he chatted with the undercover officer.  For these acts, he has and will be punished.  However, Greg does not exhibit aggravating conduct that warrants a lengthy prison sentence, such as contact offenses.

It is also worth noting that Greg's guideline calculation, while accurate, is overstated and the Court may wish to consider a downward variance for that reason.  The two-level enhancement under of USSG §2G2.2(b)(6) for the use of a computer or an

interactive computer service no longer has meaning.  In the 2021 Commission Report, the Commission found that in FY 2019 over 95% of cases involving the non-production of child pornography were enhanced under §2G2.2(b)(6) for use of a computer or computer service.[7]  Furthermore, the Commission found that courts regularly reject the §2G2.2 guideline as too high.  Only 30% of individuals sentenced under §2G2.2 in FY 2019 were sentenced within the guideline range and almost 68% of those sentenced were below the guideline range.[8]

Due to the prevalence of computers and the way in which child pornography is now accessed, nearly all child pornography cases deal with some form of computer or computer service.  When a guideline is employed in 95% of the cases, it can no longer be called a "specific offense characteristic."  Given the large number of below-guideline range sentences, it appears courts have begun to reject strict application of §2G2.2. This is likely due to the overstatement of the role a computer plays in child pornography offenses in the modern era.[9]

Based on the key factors addressed by the Commission, Greg's content, community, and conduct does not fall into a greater category of concern, and his guidelines are overstated. Greg knows this does not excuse his offense.  However, Greg asks the Court to look beyond the offense to the other relevant 3553(a) factors when assessing his sentence.

2.    **Greg's history and characteristics showing rehabilitative potential.**

In child pornography cases the question must be asked, "why did this person turn to this?"  To assist in answering that question along with addressing Greg's history and

---

[7] *Id*. at 4.
[8] *Id*. at 5.
[9] *See United States v. R.V.*, 157 F. Supp. 3d 207 (E.D.N.Y. 2016) (detailing the growth of computer usage associated with child pornography offenses and cautioning courts in applying 2G2.2).

characteristics, he voluntarily underwent a psychosexual evaluation by Dr. Stephanie Bono, a licensed forensic psychologist, who has experience with treating and evaluating sex offenders.  Dr. Bono also prepared a report for the Court's consideration.[10]

The report is detailed and provides a great deal of analysis, but in sum, Dr. Bono found that Greg was open and honest about his offense and is committed to change, he can benefit from ongoing treatment, and does not possess any characteristics that make him likely to reoffend or harm a child.

Dr. Bono's assessment of Greg points to a few main areas that may have contributed to his downward spiral.  First, Dr. Bono assessed that Greg suffered from an alcohol problem, something also echoed in the PSR.  Greg was for all intents and purposes a "functional drunk," and had been battling alcohol abuse for some time.  Second, she assessed a concern he may have suffered with depression and anxiety for a long period of time.  Third, it appears Greg had a sexual addiction that turned into a pornography addiction.

Pornography addiction works the same as any other addiction.  While "addiction" has historically been associated with the problematic overconsumption of drugs and/or alcohol, the expanding neuroscientific research in this field has changed our understanding over the last few decades. It is now evident that various behaviors, including internet pornography use, are all part of the disease of addiction.[11]  All manifestations of addiction operate via the same underlying mechanisms, and the use and addiction to internet

---

[10] *See* Exhibit, Report from Dr. Stephanie Bono (hereinafter "Bono Report").
[11] D.L. Hilton and C. Watts. *Pornography addiction: A neuroscience perspective*, 2 Surg. Neurol. Int. 19 (2011)

pornography is no different.[12]  The activity is used to escape from reality, and it can become consuming.

The reality is, Greg's addictions were heightened by his career choice as a police officer, one of the most stressful jobs in our country.  The irregular work schedule, tough working conditions, interaction with people in stressful conditions, and the ever-present reality that any day he could be confronted with a life-or-death situation all added to the problem.[13]  Dr. Bono suggests Greg may suffer from post-traumatic stress disorder from some of the horrors he experienced in his thirty-year career.

Greg should have gone to counseling, but the culture suggests that seeking professional help is a weakness.  So, he turned to porn and alcohol.  Some research suggests that individuals suffering from depression or anxiety seek out pornography as a coping strategy.[14]  Now he must stand before this Court for those choices.

Dr. Bono's testing did reveal there is hope for Greg.  She found that Greg is a low risk to reoffend and can be managed in community-based treatment.[15]  Furthermore, she found that Greg recognizes the wrongfulness of his behavior and takes responsibility for his offense without minimization or blaming others, which is rare among sex offenders.  The days of

---

[12] *Id.*

[13] Studies show that 20-30% of police officers have alcohol and substance abuse disorders.  T.R. Miller & D. M. Galvin, Assessing and Responding to Substance Misuse in Law Enforcement, 40 S. Ill. U. L. J. (2016) available at: https://law.siu.edu/_common/documents/law-journal/articles-2016/spring-2016/12%20-%20Miller%20-%20sm.pdf..
In contrast, rates of alcohol dependence and drug use disorders among the general population are approximately 5.8 percent and 9.9 percent. BF Grant, TD Saha, WJ Ruan, et al. *Epidemiology of DSM-5 Drug Use Disorder: Results From the National Epidemiologic Survey on Alcohol and Related Conditions–III*, 73(1) JAMA Psychiatry 39–47 (2016). doi:10.1001/jamapsychiatry.2015.2132

[14] Al Cooper, Eric Griffin-Shelley, David L. Delmonico, and Robin M. Mathy, *Online Sexual Problems: Assessment and Predictive Variables*, 8 Sexual Addiction & Compulsivity 267–85 (2001); Jochen Peter and Patti M. Valkenburg, *The Use of Sexually Explicit Internet Material and Its Antecedents: A Longitudinal Comparison of Adolescents and Adults*, 40 Archives of Sexual Behavior 1015–25 (2011).

[15] Bono Report, Page 12.

secrecy and addiction are over.  Greg asks the Court to give him the opportunity to seek treatment in the community by giving him a sentence that reflects his rehabilitative potential.

**3.**      **The need for the sentence imposed to reflect the seriousness of the offense and provide punishment and deterrence, balanced against the need for rehabilitation.**

There are several consequences to this plea that demonstrate punishment and deterrence.  Greg is now a felon and a sex offender.  These labels will follow him until he dies.  It is very difficult to find work as a convicted felon and even harder for sex offenders.  The Defense asks the Court to consider this impact when assessing his request.[16]

Sex offender registration also serves as a deterrent and, in many ways, is a punishment.  Sex offenders are forever marked.  Where they live and work are on public maps.  Their vehicle information is public.  If it becomes known that a sex offender lives in the area, there is an increased risk of harassment from the neighbors.  No one wants them in their neighborhood.  There are laws about where one can live and where they can go.  This limits housing options.  The public shaming will continue.

Supervised release serves as deterrence and is also for life.  The program is strict, and the officers do an excellent job at monitoring and ensuring compliance.[17]  Greg will receive these conditions and they help meet the sentencing objectives without the need for lengthy incarceration.

---

[16] *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008) (Defendant lost career because of case**,** was progressing in treatment. Defendant received probation with guideline range of 46-57 months).

[17] There are several resources and tactics that will be employed to make sure Greg follows the law.  No computer or monitored computer access, no contact with minors, restrictions of activities, regular polygraphs, and indefinite sex offender treatment are all staples of supervised release.

As stated, Greg has been in pretrial confinement for thirteen months.[18]  This was not easy time, especially as a former police officer.  He feared for his safety every day.  If sentenced to prison, he is in special danger because of his former status as a police officer.[19]

The biggest punishment Greg has faced though is his loss of the life he knew.  He has lost his career and, in many ways, his family.  Greg has faced intense public scrutiny.  His Plea Agreement was publicized for all to see.  The strain this will place on his relationship with his daughters will last forever.  He will never truly be able to pay his "debt" to society no matter how hard he tries because these punishments are lasting.

One day Greg may be given the chance to tell his daughters about his offense.  That will undoubtedly cause tension in their relationship.  He would feel lucky to get that chance at some point as he currently has no contact with either.  Greg must live with that.  That is lasting punishment.

Punishment, deterrence, and the need for rehabilitation all ultimately drive at the same point, assuring that Greg does not reoffend.   Generally, the 2021 Sentencing Commission found that the overall recidivism rate for non-production defendants is low (27.6%), and the rate of sexual recidivism is very low (4.3%).[20]  While generally child pornography offenders have a low risk to reoffend, Greg specifically poses a low risk to reoffend as demonstrated by the independent psychological evaluation discussed above,

---

[18] Defense asks the Court ensure Greg is given credit for time served since September 2, 2021, as reflected in the PSR, page 1.

[19] *See* Jamal Andress, Protecting Ex-Officers From Becoming Targets While Serving Prison Time, May 18, 2022,  https://www.newsy.com/stories/protection-for-ex-officers-in-prison/  (last viewed August 8, 2022) (quoting prison officials who state former police officers involved in high-profile cases puts them at risk in prison and leads to many being forced into solitary confinement for protective custody).

[20] 2021 Sentencing Commission Report at 65. (Finding the most common new offense type was "administration of justice," which includes offenses like contempt of court, failure to appear, obstruction of justice, and other technical violations).

and due to his older age.  This process has been the "wake up call" Greg needed, and he will not be back before the Court again.

### 4.     The kinds of sentences available and the need to avoid unwarranted sentencing disparities.

Courts have found that the "parsimony provision" of § 3553(a) which states that a court should impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing is the central relevant policy when sentencing child pornography offenders.[21]  There are several pornography cases in the Eastern District of Missouri and Southern District of Illinois that have been resolved with favorable sentences when defendants have demonstrated that a downward variance is just, even in cases involving aggravating facts that are not present in this case.[22]

Additionally, according to the Commission's Judiciary Sentencing Information System (JSIN), in Fiscal Year 2017-2021 according to national data, the number of offenders sentenced under § 2G2.2 with a Total Offense level of 17 and who were in Criminal History Category I (like Greg) totaled only 28.  Of those 28 offenders, 18 percent received probation.[23]  Of those remaining offenders who received a prison sentence, the average length of prison was 28 months, and the median length was 24 months.[24]  What this tells us is that the requested

---

[21] 18 U.S.C. 3553(a); *Beiermann*, 599 F. Supp. 2d at 1114.

[22] *United States v. Johnson*, 4:18-CR-564 AGF, guilty of one count possession of child pornography and received time served with ten years supervised release with six months of home detention and 80 hours of community service.  The variance was given in that case due to relevant 3553(a) factors, including the defendant's positive psychosexual evaluation; *United States v. Okada*, case number, 4:14-CR-361 CDP, *United States v. Silies*, 4:16-CR-0099 JAR, in which both defendants received one-day time served with lifetime supervised release based on relevant 3553(a) factors; and *United States v. Samra*, 4:13-CR-11 CEJ, guilty of one count possession of child pornography, given six month prison with ten years supervised release; *United States v. Dunwiddie*, 4:13-CR-11, guilty of two counts of possession of child pornography, given one day credit for time served with lifetime supervised release; *See also United States v. McNair*, 3:15CR30111 SMY, where the defendant received five years' probation with forty hours of community service; and *United States v. Faulkner*, 3:15CR30121 SMY, where the defendant received five years' probation.

[23] Available at https://jsin.ussc.gov (§ 2G2.2 Total Offense level of 17, with Criminal History Category I).

[24] *Id*.

sentence is reasonable, even when factoring in that the charge was amended.  Defense respectfully requests the Court consider this when determining the sentence.

### *Conclusion*

Greg is determined that, *"Maryland Heights police officer arrested in online sex predator sting,"* will not be the words that define him.  He has demonstrated remorse and a meaningful commitment to change.  Greg possesses the ability to succeed on supervised release, and the facts support that.  A lengthy prison sentence is not needed for him to get the message.

Justice is done by Greg being a convicted felon and sex offender with a period of lifetime supervised release with the strict conditions that follow it.  This sentence will punish, deter, and afford meaningful rehabilitation.  Confinement beyond the recommended period is not necessary for him to "get the message" or be punished further.

Greg understands that he now writes his own "headlines" and is in control of his own future.  Because of his conduct, his future will not be easy.  His relationship with his daughters, if any, will not be easy.  But once placed on supervised release it will not be a wasted opportunity.  Greg will prove to his family, the Court, and community he can be the honorable man he once was.

WHEREFORE, for the foregoing reasons Defendant Greg Ortlip respectfully requests the Court sentence him to forty-eight months confinement, with credit for time served, and a recommendation for RDAP screening.

Respectfully submitted,

FRANK, JUENGEL & RADEFELD,
ATTORNEYS AT LAW, P.C.

By */s/ Joseph W. Flees*
JOSEPH W. FLEES (#60872MO)
Co-Counsel for Defendant
7710 Carondelet Avenue, Suite 350
Clayton, Missouri 63105
(314) 725-7777
jflees@fjrdefense.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Jillian Anderson
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

*/s/ Joseph W. Flees*
JOSEPH W. FLEES

13